IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Randolph Alexander Watterson**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No.: 9:06-1064-PMD-GCK ) ) |
| **Tracy Fowler**, Detective for Cherokee County Sheriff's Department; **Bill Blanton**, Sheriff of Cherokee County; **Cherokee County Sheriff's Department**; **South Carolina Department of Insurance**, | ) **ORDER** ) ) ) ) ) ) |
| Defendants. | ) ) |

This matter is before the court upon Plaintiff Randolph A. Watterson's ("Watterson" or "Plaintiff") objections to the Magistrate Judge's recommendation that this court dismiss Watterson's § 1983 petition without prejudice and without issuance and service of process. The record contains a report and recommendation of a United States Magistrate Judge ("R&R"), which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A party may object, in writing, to an R&R within ten days after being served with a copy of that report. 28 U.S.C. 636 (b)(1). Watterson timely filed objections to the R&R.

**BACKGROUND**

Watterson is a pre-trial detainee at the Cherokee County Detention Center in Gaffney, South Carolina. Proceeding *pro se*, Watterson brings this claim under 42 U.S.C. § 1983 against Tracy Fowler ("Detective Fowler" or "Fowler"), a detective for the Cherokee County Sheriff's Department, the Sheriff of Cherokee County ("Sheriff Blanton" or "Sheriff"), the Cherokee County Sheriff's Department ("Sheriff's Department"), and the South Carolina Department of Insurance

("Department of Insurance").[1]

The incident giving rise to Watterson's claim took place on March 8, 2006, in Blacksburg, South Carolina, where Watterson was involved in a "physical confrontation" with a man named Randy Moss ("Moss"). Following the altercation, Watterson fled with his wife and six-month old son to North Carolina. Believing that Watterson had kidnaped his wife and son, Detective Fowler issued an Amber Alert on behalf of Watterson's son. Thereafter, on March 9, 2006, the Cherokee County Sheriff's Department arrested Watterson and charged him with kidnapping. The Sheriff's Department eventually dropped the kidnapping charges, but Watterson still faces assault charges relating to the "physical confrontation" with Moss.

In his § 1983 petition, Watterson claims that Cleveland County, North Carolina sheriff's officials directed German Shepards to attack him and that the dogs injured his finger and bit him "numerous times" on his legs, causing "abrasions." Watterson also asserts that he has been denied bail and that his reputation is ruined due "to the tort, slander, and defamation of character by the sheriff's department." (Compl. at 3.) Watterson seeks a total of 57 million dollars in damages.

## STANDARD OF REVIEW

### I.     The Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636 (b)(1). Any written objection must specifically identify the portions of the R&R to which objections are made and the basis for those

---

[1] The longstanding practice is to construe *pro se* complaints liberally. *See Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002)*;see also Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

objections. *Id.* After a review of the entire record, the R&R, and Watterson's objections, this court finds that the R&R fairly and accurately summarizes the facts. However, the court finds that the R&R applies the correct principles of law only with respect to the Eleventh Amendment and Watterson's "defamation" claim. The court disagrees with the R&R's reliance on *Heck v. Humphrey*, 512 U.S. 477 (1994), and therefore, the court adopts the R&R only to the extent it is consistent with this Order.

## **DISCUSSION**

The court begins its analysis by discussing its disagreement with the R&R's reliance on *Heck*, 512 U.S. 477. Next, the court considers whether the Eleventh Amendment precludes Watterson's claims against certain Defendants. Finding that the Eleventh Amendment bars Watterson's claims against the South Carolina Department of Insurance, the Cherokee County Sheriff's Department, and Sheriff Blanton, the court then considers whether Watterson has stated a viable § 1983 claim against Defendant Tracy Fowler ("Fowler"), a Detective for the Cherokee County Sheriff's Department.

**I.** *Heck v. Humphrey*

In *Heck*, the United States Supreme Court held that for a plaintiff to recover damages on the basis of an allegedly unconstitutional conviction or imprisonment, the plaintiff must first have the conviction or sentence "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. Specifically, the Court stated:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

> invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeus corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.*

In the R&R, the Magistrate Judge concludes that "[s]ince the plaintiff is challenging matters pertaining to his pending criminal case, the § 1983 complaint is subject to summary dismissal because a right of action has not yet accrued." (R&R at 4.) (citing *Heck*, 512 U.S. at 486-87). The court disagrees with the Magistrate Judge, however, because it is clear from both Watterson's § 1983 petition and his objections to the R&R that he is not challenging matters pertaining to his pending criminal case. Rather, Watterson attempts to assert an excessive force claim in relation to the dogs used during his arrest. Additionally, Watterson attempts to assert a "defamation" claim in relation to statements made by law enforcement officers.[2]

Ultimately, the court finds the Magistrate Judge's assertion that Watterson is barred from bringing an excessive force claim based on *Heck* to be incorrect: whether the officers used excessive force is distinct from whether Watterson committed the crimes charged to him, and thus, a judgment in favor of Watterson on the excessive force claim would not necessarily imply the invalidity of any subsequent conviction or sentence. Accordingly, the court does not agree with the Magistrate Judge's conclusion that Watterson's complaint is subject to summary dismissal pursuant to *Heck*.

---

[2] As explained more thoroughly below, Watterson's "defamation" claim is essentially no more than a state law claim, and as such, *Heck* does not apply.

4

## II.      The Eleventh Amendment

Absent waiver or consent, the Eleventh Amendment bars suits directly against a state or an arm of the state.[3] *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (holding "that in the absence of consent, a suit in which the State . . . is named as a defendant is proscribed by the Eleventh Amendment"). Moreover, an arm of the state is not considered a "person" within the meaning of section 1983.[4] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In *Quern v. Jordan*, 440 U.S. 332 (1979), the Supreme Court held that the Eleventh Amendment bars § 1983 suits against state governments in federal court. "Although by its terms the Amendment applies only to suits brought against a state by 'Citizens of Another State,' it is well established that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.' "[5] *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). An agency of state government, such as the South Carolina Department of Insurance, is an arm of the state for purposes of the Eleventh Amendment. *See, e.g.*

---

[3] The Eleventh Amendment states: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

[4] Section 1983 provides the following:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

[5] Thus, Watterson's objection that the Eleventh Amendment does not bar his suit because he is a citizen and resident of North Carolina, rather than South Carolina, is wholly without merit.

*Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 3 (2d Cir. 1993) ("The claim against the Department of Insurance is barred by the Eleventh Amendment, and we therefore dismiss that claim *sua sponte* for lack of subject matter jurisdiction."). Accordingly, the court dismisses Watterson's claims against the South Carolina Department of Insurance. The next issue is whether the Eleventh Amendment likewise bars Watterson's claims against the Cherokee County Sheriff's Department and/or Sheriff Blanton.

"While states, state entities, and state officials are protected by the Eleventh Amendment, the Amendment erects no jurisdictional bar to suits against local governmental entities." *Gray*, 51 F.3d at 431 (citing *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 70 (1989)); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690, n. 54 (1978) ("[T]here [is no] basis for concluding that the Eleventh Amendment is a bar to municipal liability."). In determining whether a governmental entity is an arm of the State or more like a county or municipality, the court considers various factors. The principle factor, upon which courts most often rely, is whether the state treasury would be liable for any judgment. *See Gray*, 51 F.3d at 433 (stating that the "largely, if not wholly, dispositive" factor in determining whether an entity is an arm of the state is the state treasury's liability for judgment). If the extent of the state treasury's liability with respect to judgment is not clear from the record, the court must consider other factors, "chief among which are whether the suit will jeopardize the integrity retained by [the] State in our federal system and whether the state possesses such control over the entity claiming Eleventh Amendment immunity that it can legitimately be considered an arm of the state." *Gray*, 51 F.3d at 434 (internal citations and quotations omitted); *see also Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996).

Analysis of the aforementioned factors has led previous courts to conclude that, in South

Carolina, a county Sheriff and the Sheriff's Department are entitled to Eleventh Amendment protection. *See Cromer*, 88 F.3d at 1332 ("[I]n his capacity as a state official, Sheriff Brown is immune from suit under § 1983 for money damages."); *McCall v. Williams*, 52 F. Supp.2d 611, 623 (D.S.C. 1999) ("[T]he *Sheriff's Department, like the sheriff*, is an arm of the state and entitled to Eleventh Amendment immunity.") (emphasis supplied); *Gulledge v. Smart*, 691 F. Supp. 947, 954 (D.S.C. 1988), *aff'd*, 878 F.2d 379 (4th Cir. 1989)[6]; *Cone v. Nettles*, 417 S.E.2d 523, 524-25 (S.C. 1992). Based upon the reasoning of these cases, the court concludes, as the Magistrate Judge did, that Watterson's claims against the Cherokee County Sheriff's Department and Sheriff Blanton must be dismissed. The only remaining Defendant, therefore, is Detective Fowler, and the court must determine whether Watterson has a viable § 1983 claim against Fowler.

## III. Excessive Force

Watterson attempts to assert a claim for excessive force, in relation to the use of dogs in his arrest. However, Watterson does not state a proper claim against any South Carolina Defendants. Rather, in his complaint, Watterson asserts that sheriff's officials from Cleveland County, North Carolina, ordered dogs to attack him, resulting in an injury to his finger and numerous abrasions on his legs. (Compl. at 3.) Also, in his objections to the Magistrate Judge's R&R, Watterson asserts that two German Shepherds "employed by the Cleveland County sheriffs dept." attacked him, resulting in lacerations to his legs and hands. (Obj. at 4.) It is clear, therefore, from Watterson's

---

[6] In *Gulledge*, the court concluded that South Carolina sheriffs are state officials and not persons for purposes of § 1983, based upon the following facts: (1) the South Carolina Constitution established the sheriff's office and provided that the General Assembly determines a sheriff's powers and duties; (2) state law sets forth a sheriff's duties and compensation; (3) a sheriff's arrest power relates primarily to state offenses; and (4) the Governor is empowered to fill vacancies or remove a sheriff for misconduct. 691 F.Supp. at 954; *see also Brisbane v. Beaufort County Sheriff's Dept.*, 2006 WL 279024, at *4 (D.S.C. Feb. 2, 2006) (setting forth the same facts).

own complaint and objections that he has not stated a viable excessive force claim, as he readily admits that none of the named Defendants, including Detective Fowler, had ownership, possession, or control of the canines at the time of his arrest. *See*, *e.g.*, *Hinds v. Mohr*, 56 Fed.Appx. 591, 593 (4th Cir. 2003) (unpublished) (dismissing § 1983 claims against officers who exercised no authority or command over a canine that attacked the petitioner during his arrest). Accordingly, the court dismisses Watterson's § 1983 claim for excessive force.

### IV.     Watterson's "Defamation" Claim

In his § 1983 petition, Watterson attempts to assert a claim for "committing a tort against [him] and slandering [his] name publicly – defamation of character/another form of cruel and unusual punishment."[7] (Compl. at 1.) In the R&R, the Magistrate Judge states that "[a]n alleged act of defamation of character or injury to reputation is not actionable under 42 U.S.C. § 1983." (R&R at 16.) Additionally, the Magistrate Judge notes that "contents of governmental records – such as judicial proceedings, case reports, published cases, investigative reports, or arrest records – do not give rise to liability for slander or libel." (R&R at 16.) Lastly, the Magistrate Judge points out that "civil rights statutes, such as 42 U.S.C. § 1983, do not impose liability for violations of duties of care arising under a state's tort law." (R&R at 17.)

In his objections to the R&R, Plaintiff requests "20 million dollars for slander by Detective Tracy Fowler for swearing under oath that he Randolph Watterson did kidnap and abduct Elijah and Kelli Camp, knowing that Mr. Watterson did not commit[] that offense." (Obj. at 3.) Additionally,

---

[7] Thus, Watterson uses the terms "slander" and "defamation" in his petition. "Slander" usually refers to acts of defamation that are made "by oral expressions or transitory gestures[,]" while "libel" refers to acts of defamation that are expressed "by print, writing, pictures, or signs." *See* BLACKS LAW DICTIONARY 824,1244 (5th Ed. 1979).

Watterson objects that his "picture was published in the newspaper and labeled a kidnapper and this constitutes 'libel.'" (Obj. at 5.)

Ultimately, it is clear that Watterson cannot use § 1983 as a vehicle to assert his "defamation" claim. *See*, *e.g.*, *Siegert v. Gilley*, 500 U.S. 226, 233 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation."); *Brisbane*, 2006 WL 279024 at *5 ("The plaintiff's claims relating to defamation and slander are subject to summary dismissal because defamation of character or of reputation is not actionable under 42 U.S.C. § 1983."). Thus, it is clear that "defamation" is a state law claim, over which this court declines to exercise jurisdiction. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."); *see also United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not a plaintiff's right . . . if the federal claims are dismissed before trial . . . the state law claims should be dismissed as well"). Accordingly, the court dismisses Plaintiff's "defamation" claim.[8]

In conclusion, finding Plaintiff's remaining objections to be wholly without merit, the court finds that Defendants South Carolina Department of Insurance, Cherokee County Sheriff's Department, and Sheriff Blanton are entitled to Eleventh Amendment protection. Additionally, with respect to Plaintiff's remaining claims against Defendant Fowler, the court finds that Plaintiff's complaint fails to state a viable § 1983 claim.

---

[8] Moreover, the court notes that to the extent Plaintiff attempts to assert a cause of action under the South Carolina Tort Claims Act, it is clear that such suit must be brought in a state court within the boundaries of South Carolina. *See* S.C. Code Ann. § 15-78-20(e).

**CONCLUSION**

It is, therefore, **ORDERED** for the foregoing reasons, that Plaintiff's complaint is **DISMISSED** without prejudice and without issuance and service of process. Additionally, the above-captioned case is deemed a "strike" for purposes of the "three strikes rule" of 28 U.S.C. § 1915(g).[9]

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**June 8, 2006**

**NOTICE OF RIGHT TO APPEAL**

Petitioner is hereby notified that he has the right to appeal this Order within thirty (30) days from the date hereof, pursuant to Federal Rules of Appellate Procedure 3 and 4. *See* Fed. R. App. P. 3-4.

---

[9] 28 U.S.C. § 1915(g) reads, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."